Ryland, D.C., 78 F.Supp. 488, 490, Id., 8 Cir., 172 F.2d 784, and cases cited.

7. Act 116 of the Acts of the General Assembly of Arkansas is not in contravention of the laws or constitution of the State of Arkansas. National Union Fire Insurance Company v. Dickinson, Auditor, et al., 128 Ark. 367, 194 S.W. 254. It is a valid regulatory statute and the acts of the defendants were within its scope, and in accordance with its provisions.

8. Nowhere in this record does it appear that any facts or conditions existed which would justify plaintiff in 'fearing intimidation, boycott or coercion, or show that any such boycott, intimidation or coercion was attempted or threatened. Certainly the fact that plaintiff was advised that the insurance contract would be cancelled in accordance with its terms, unless premium was paid at the established rate is not sufficient. Plaintiff already knew this when it accepted the contract, and common business practice would have brought home to him this knowledge and information.

9. The plaintiff is not entitled to judgment for treble damages nor for injunctive relief. Keogh v. Chicago & Northwestern R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183.

10. Defendants are entitled to have a summary judgment, and summary judgment will be entered, adjudging the costs against the plaintiff. International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20.

**LIBERTY MUT. INS. CO. et al. v. PILLSBURY et al.**

No. 28507.

United States District Court
N. D. California, S. D.

Sept. 9, 1949.

Tipton & Weingand, Los Angeles, California, for plaintiffs.

Frank J. Hennessy, United States Attorney, San Francisco, California, for defendant Warren H. Pillsbury, Deputy Commissioner, Bureau of Employees' Compensation, San Francisco, Cal.

GOODMAN, District Judge.

This is a proceeding to set aside an order of the Deputy Commissioner refusing to terminate compensation awarded under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., 44 Stat. 1424, as made applicable to persons employed at certain defense bases by the Naval Bases Act of August 16, 1941, 42 U.S.C.A. §§ 1651–1654, 55 Stat. 622.

Plaintiff employers and their respective insurance carriers had petitioned the Deputy Commissioner to terminate compensation payments on the ground that defendant Laird had been paid the $7,500 maximum compensation allowable under the Act. Section 14(m) of the Act, 33 U.S.C.A. § 914(m) provides that "The total compensation payable under this Act for injury or death shall in no event exceed the sum of $7,500." 44 Stat. 1432.[1] The Deputy Commissioner interpreted this section to mean that $7,500 is the maximum compensation for each separate injury. He found that Laird's disability was the result of two injuries and ordered that payments continue.

Both sides seem to be in agreement that, in order to resolve this controversy, the Court must decide whether Section 14(m) states the maximum compensation an employee can receive for each separate injury or, as the plaintiffs urge, the maximum he may receive for all injuries in the course of his industrial life.[2] But the Court need not reach this question under the facts of this case. Whether the employee actually had more than one injury is the true issue upon which the cause can and should justly be determined.

On December 2, 1941, Laird was employed as a carpenter at Johnston Island, in the Pacific, by Pacific Naval Air Bases. While aiding other workmen in lifting a steel derrick, Laird felt a sudden sharp pain in his back. Though he immediately ceased lifting the derrick, the pain continued and he was unable to return to his work. For several days he was given heat treatments, and then, because the pain in his back prevented him from working, he was given leave to go to Honolulu in order to obtain a pair of eye glasses he had needed for some time. Laird arrived in Honolulu on December 10, and on December 13, he reported for transportation back to Johnston Island. He was then informed he was to be loaned to Pearl Harbor Dry Dock No. 4, whose predecessor was the Pacific Bridge Company, for work in Honolulu. That same day he began work with Pearl Harbor Dry Dock. He continued to work regularly, although, as he testified at the hearings before the Deputy Commissioner, "not steadily" in that he took off work whenever possible to rest his back which still troubled him. On January 13, for the first time since December 2, he attempted to engage in a lifting operation. As he assisted in turning over a concrete form, his foot slipped in some grease and he was immediately seized with severe pain in his back and down his right leg. Later in the day he was examined by a physician who decided he had suffered a rupture of some sort and recommended that he be returned to the mainland for treatment. Laird continued to work as best he could until January 28

1. In two Circuits it has been held that compensation for injury and compensation for death are independent awards, and that under Section 14(m), there is a $7,500 limit on death benefits and another $7,500 limit on compensation for injury. See Norton v. Travelers Insurance Co., 3 Cir., 1939, 105 F.2d 122; International Mercantile Marine Co. v. Lowe, 2 Cir., 1938, 93 F.2d 663, 115 A.L.R. 896.

2. Section 14(m) was completely revised by the Act of June 24, 1948, 62 Stat. 603, and the issue here tendered could not now arise. This case, however, is governed by Section 14(m) as it read in 1942.

About the first of February he sailed for the United States. After his arrival in California, he did no work for about a month. From March 30 until June 4 he performed light work on the assembly line at Northrup Aviation. His back continued to cause him extreme discomfort and, during this period, he was absent from work a total of almost three weeks. On June 3, he was examined by his own physician who found a rupture of an intervertebral disc in his back. The ruptured disc was surgically removed on July 9. After the operation Laird improved. The pain in his leg ceased, but his back remained weak and continued to pain him at times.

On November 4, 1942, after several hearings, the Deputy Commissioner ordered Pacific Naval Air Bases to compensate Laird for the week's disability following the first back strain. He found that the periods of partial and total disability following the second back strain and the existing total disability were the joint result of two injuries, and ordered that weekly compensation, which had accrued and which would subsequently fall due, should be divided equally between the two employers. When the insurance carriers of the two employers had jointly paid $7,500, they petitioned for an order terminating compensation. The petition was denied and this proceeding followed.

■ Although Section 14(m) may be ambiguous on its face, it is clear that if it is to have any force at all, it must at least limit to $7,500 the compensation payable for disability resulting from a specific damage to a particular body part. When bodily damage is attributed to an occupational disease (an occupational disease being considered an injury under the Act), many, if not innumerable physical events, may be in the stream of causation. But to interpret Section 14(m) to mean that the maximum compensation stated should be multiplied by the number of events contributing to the disease would be completely unreasonable. It is equally so when the bodily damage is of traumatic origin, even

though in the latter case, the events contributing to the damage may be more discernibly separable.

Dr. Mark A. Glaser who examined Laird on September 8, 1942 at the request of plaintiff, Liberty Mutual Insurance Co., stated in his report that "in view of the history of these two injuries it is further my opinion the first injury caused a beginning weakness of the ligaments supporting the nucleus and the second injury completed the relaxation of the ligaments. These two injuries together resulted in such a relaxation of the ligaments supporting the nucleus that a gradual complete rupture occurred. As a matter of fact a ruptured intravertebral (sic) disc may occur without injury and be due to a degenerative process. I do not see how any surgeon can place the cause of a ruptured intravertebral disc upon either of these injuries to the exclusion of the other when we know these ruptures may occur spontaneously without the history of injury."

The evidence without conflict shows that the rupture of the intervertebral disc was caused by at least two events—two strains, close in point of time. Each strain may have caused distinct bodily harm in the sense that, after each, body cells, theretofore sound were damaged. But the effect of the first strain was still present when the second occurred, and, in the end, the injury was of a unitary nature. Indeed it is doubtful that it would have been otherwise contended, had Laird not had two different employers.

■ It is my opinion that the Congress did not intend that a workman, disabled by a rupture resulting from a series of strains, should receive more compensation than a workman disabled by a rupture complete, as a result of a single event. Each stress or strain which plays a part in a single injury cannot be made the basis for increasing the maximum compensation allowable under the Act.

■ Since the record is clear that the injury was single, there is no legal justification for doubling the maximum award.

The Commissioner was in error in denying the petition to terminate compensation. His order is set aside and it is Ordered that compensation be terminated.